

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 3 0 2004

J.T. NOBLIN, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF MISSISSIPPI

### SOUTHERN DIVISION

| | |
|---|---|
| George Paz, Barbara Faciane, Joe Lewis, Donald Jones, Ernest E. Bryan, Gregory Condiff, Karla Condiff, Odie Ladner, Henry Polk, Roy Tootle, William H. Stewart, Jr., Margaret Ann Harris, Judith A. Lemon, Theresa Ladner, and Yolanda Paz, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br>     v. <br><br> Brush Engineered Materials, Inc., Brush Wellman, Inc., Wess-Del, Inc. and the Boeing Company, <br><br> Defendants. | CIVIL ACTION NO.: 104CV597GuRo <br><br> SECTION: <br><br><br> MAGISTRATE JUDGE DIV.: <br><br> JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT FOR MEDICAL MONITORING

Plaintiffs, by and through undersigned counsel, for themselves and others similarly situated, bring this action seeking the establishment of a medical monitoring trust fund due to defendants' failure to warn plaintiffs and the class of the dangers of beryllium, a toxin which may cause severe illness or death, and to which plaintiffs and the class were exposed at the John C. Stennis Space Center in Stennis, Mississippi and the Canoga Park facility, in Canoga Park,

000001

California, two plants operated by the Rocketdyne Propulsion & Power division of The Boeing Company.

In support thereof, plaintiffs aver, upon information and belief, except as to the allegations that pertain to the named plaintiffs, as follows:

## I. **INTRODUCTION**

1.

This is a class action complaint filed by plaintiffs, George Paz, Barbara Faciane, Joe Lewis, Donald Jones, Ernest E. Bryan, Gregory Condiff, Karla Condiff, Odie Ladner, Henry Polk, Roy Tootle, and William H. Stewart, Margaret Ann Harris, Judith A. Lemon, Theresa Ladner, Yolanda Paz, Jr., individually and on behalf of all others similarly situated, for the establishment of a medical monitoring trust fund as a result of their exposure to the use of products containing beryllium which emitted toxic and hazardous beryllium dust and particulate matter at the John C. Stennis Space Center in Mississippi ("Stennis") and Canoga Park facility in California ("Canoga Park"), both operated by the Boeing Company.

2.

Defendants, Brush Engineered Materials, Inc., through its subsidiaries, including but not limited to defendant, Brush Wellman, Inc. (hereinafter both companies are referred to as "Brush"), is one of the world's largest manufacturers of beryllium-containing products, and operates manufacturing and other facilities throughout the world, including locations in Cleveland, Ohio; Delta, Utah; Tuscon, Arizona; Newburyport, Massachusetts; Shoemakersville, Pennsylvania; Fairfield, New Jersey; Elmore, Ohio; California; Florida; Japan; the United Kingdom; Singapore, Taiwan, and South Korea. At all relevant times, Brush Wellman, Inc. was

000002

engaged in the mining, milling, manufacturing, processing, compounding, converting, selling and distributing of beryllium and beryllium-containing products. Its products have been sold to Boeing, either directly or through other manufacturers, fabricators, and distributors, and used at the Stennis Space Center and Canoga Park facilities.

3.

Defendant, Wess-Del, Inc. ("Wess-Del"), is a fabricator of beryllium goods who machined, assembled, fabricated, distributed and/or sold beryllium-containing goods to the Boeing Company for use at its Stennis Space Center and Canoga Park facilities.

4.

Defendant, the Boeing Company ("Boeing"), through its Rocketdyne Propulsion and Power division, is the operator of the Stennis and Canoga Park facilities, at which employees of Boeing and the Defense Contract Management Administration ("DCMA") were exposed to the sanding, filing, brazing, sandblasting, metalizing, welding, grinding, and/or machining of beryllium-containing products which processes introduced respirable beryllium dust, fumes and particulate matter into the air in and throughout these facilities.

5.

The causes of action brought by plaintiffs in this litigation are based upon exposure to respirable beryllium dust, fumes and particulate matter, both by employees who have worked in the Stennis Space Center and Canoga Park facilities, and by family members of these employees. The employees have inadvertently carried home respirable beryllium dust, fumes and particulate matter on their bodies, clothes, and other personal property to their spouses and family members, who have thus become at risk also for contracting latent catastrophic diseases caused by such

-3-

exposure.

6.

Specifically, Plaintiffs are:

(a)     present or former DCMA employees, who conducted quality assurance work at Stennis, and assert claims in this action against Boeing, Brush and Wess-Del;

(b)     present or former DCMA employees, who conducted quality assurance work at Canoga Park, and assert claims in this action against Boeing, Brush and Wess-Del;

(c)     present and former employees of Boeing at its Stennis facility, who conducted machining, engineering, quality assurance and other work at Stennis, and who assert claims in this action against Brush and Wess-Del; and,

(d)     the spouses and children of all such DCMA and Boeing employees, who assert claims in this action against Boeing, Brush and Wess-Del.

7.

The Defense Contract Management Administration, the employer of a number of the plaintiffs and class members, is an agency of the Department of Defense, and came into existence in approximately 1987. DCMA has continued the quality assurance work previously conducted by other government agencies, such as the Department of the Air Force and the Defense Contract Agency Services. DCMA and its predecessor agencies will be collectively referenced as "DCMA," throughout this Complaint.

000004

8.

Plaintiffs and the class have been injured due to defendants' failure to warn, and seek the establishment of a medical monitoring trust fund.

9.

Medical tests and procedures are available at this time, including comprehensive pulmonary and respiratory evaluations, x-rays, blood testing and other diagnostic techniques, that can provide detection and warning of the deleterious health effects resulting from exposure to the use of beryllium-containing products.

10.

This Court's grant of medical monitoring relief in this action would:

(a)    Promote early diagnosis and treatment of disease or illness resulting from exposure to toxic substances caused by these tortfeasors' wrongful conduct;

(b)    Avoid the potential injustice of forcing an economically disadvantaged person to pay for expensive diagnostic examinations necessitated by another's wrongful conduct, and prevent denying him or her potentially life saving treatment;

(c)    Afford toxic tort victims, for whom other sorts of recovery may prove difficult, immediate compensation for medical monitoring needed as a result of exposure;

(d)    Further the deterrent function of the tort system by compelling those who expose others to toxic substances to minimize risks and costs of exposures; and

000005

(e)     Further the important public health interest in fostering access to medical

testing for individuals whose exposure to toxic chemicals creates an

enhanced risk of disease.

## II.   FEDERAL JURISDICTION AND VENUE

11.

The Court has jurisdiction under 28 U.S.C. § 1332 because there is a complete diversity

of citizenship among the parties and the amount in controversy of each and every claim equals or

exceeds $75,000.00, exclusive of interest and costs.

12.

Venue is proper in this judicial District and Division under 28 U.S.C. § 1391, as the

exposure giving rise to Plaintiffs' claims took place in this District.

13.

Defendant, Brush Engineered Materials Inc., is an Ohio corporation with its principal

office and corporate headquarters located at 17876 St. Clair Avenue, Cleveland, Ohio 44110.

Defendant, Brush Wellman, Inc., a wholly owned subsidiary of Brush Engineered Materials, Inc.,

is also an Ohio corporation with its principal office and corporate headquarters also located at

17876 St. Clair Avenue, Cleveland, Ohio 44110.  These defendants are hereinafter collectively

referred to as "Brush."  Both corporations may be served with process by serving their Registered

Agent, Michael C. Hasychak, 17876 St. Clair Avenue, Cleveland Ohio  44110.  At all material

times, Brush was engaged in tortious conduct in the State of Mississippi and within this judicial

district such as to make the exercise of this Court's jurisdiction over Brush appropriate and

lawful.

000006

14.

Defendant, Wess-Del, Inc. ("Wess-Del"), is a California corporation with its principal

office and corporate headquarters located at 1502 Arbuckle Court, Santa Clara, California 95054,

and may be served with process by serving its Registered Agent, David A. Kirst, at 1502

Arbuckle Court, Santa Clara, California 95054. At all material times, Wess-Del was engaged in

tortious conduct in the State of Mississippi and within this judicial district such as to make the

exercise of this Court's jurisdiction over that entity appropriate and lawful.

15.

Defendant, The Boeing Co. ("Boeing"), is a Delaware corporation with its principal

office and corporate headquarters located at 100 N. Riverside, Chicago, IL 60606-1501, and

maintains an agent for service of process in Mississippi c/o Corporation Service Company, 506

S. President St., Jackson, Mississippi 39201. At all material times, Boeing was engaged in

tortious conduct in the State of Mississippi and within this judicial district such as to make the

exercise of this Court's jurisdiction over that entity appropriate and lawful.

16.

At all times material hereto, all defendants acted by and through their respective officers,

directors, agents, principals, employees, servants or workers, any and all of whom were actively

engaged and serving within the course and scope of their authority, duties, office and/or

employment.

000007

## III. CLASS ACTION ALLEGATIONS

17.

This case is brought on behalf of the following class:

All those employees of the Boeing Company and the Defense Contract
Management Agency who have worked at the John C. Stennis Space Center in
Stennis, Mississippi and/or the Canoga Park facility in Canoga Park, California,
which plants are operated by the Boeing Company, and have been exposed to
respirable beryllium dust, fumes and particles emitted by such processes
including, but not limited to, sanding, filing, brazing, sandblasting, metalizing,
welding, grinding and/or machining of beryllium-containing products, and the
household members of these employees.

18.

The class should be divided into the following subclasses:

(a)     Subclass I:  Persons who are or were employees of the Defense Contract

        Management Agency, and were exposed to respirable beryllium at the John C.

        Stennis Space Center in Stennis, Mississippi.  These persons assert claims against

        Boeing, Brush and Wess-Del.

(b)     Subclass II:  Persons who are or were employees of the Defense Contract

        Management Agency, and were exposed to respirable beryllium at Boeing's

        Canoga Park facility.  These persons assert claims against Boeing, Brush and

        Wess-Del.

(c)     Subclass III:  Persons who are or were employees of Boeing and were exposed to

        respirable beryllium at the John C. Stennis Space Center in Stennis, Mississippi.

        These persons assert claims against Brush and Wess-Del.

(d)     Subclass IV:  Persons who are the spouses and children of members of subclasses

000008

I, II, or III, and were exposed to respirable beryllium by contact with that subclass member, that person's clothing or other personal property. These persons assert claims against Boeing, Brush and Wess-Del.

19.

This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure:

(a)     Each subclass, which includes hundreds or thousands of class members, is so numerous that joinder of all members is impractical;

(b)     There are questions of law and fact common to the class, including the following;

(1)     Whether plaintiffs and the class have been exposed to greater than normal background levels of beryllium;

(2)     Whether beryllium is a proven hazardous substance;

(3)     Whether as a proximate result of the exposure, plaintiffs and the class have a significantly increased risk of contracting a serious latent disease;

(4)     Whether a monitoring procedure exists that makes early detection of the disease possible;

(5)     Whether the prescribed monitoring regime is different from that normally recommended in the absence of exposure;

(6)     Whether the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles;

(7)     Whether the establishment of a medical monitoring fund is in the public interest;

-9-

(8)     Whether defendants failed to adequately warn of the toxicity of beryllium and the adverse health effects which may be caused by exposure to respirable beryllium dust, fumes and particulate matter; and

(9)     Whether defendants failed to provide plaintiffs and the class with instructions and information for the safe use of beryllium-containing products and sufficient safeguards to reduce exposure to respirable beryllium dust, fumes and particulate matter.

(c)     In addition, there are questions of law and fact common to subclasses I, II, and IV, including the following:

(1)     Whether defendant Boeing caused or allowed its contract or outside workers and invitees to be exposed to levels of respirable beryllium dust, fumes and particulate matter capable of causing disease;

(2)     Whether defendant Boeing failed to take reasonable and appropriate means, including the use of engineering and ventilatory controls and/or industrial hygiene measures, to reduce and/or eliminate exposure to respirable beryllium, in connection with the performance of its machining, sanding, filing, brazing, welding, grinding, sandblasting and/or metalizing processes of beryllium-containing products;

(3)     Whether defendant Boeing violated applicable regulations and standards concerning ventilatory controls and indoor air pollution; and

(4)     Whether defendant Boeing knew, or should have known, of the hazards beryllium posed to the class members, but chose not to warn, nor to take

000010

any other remedial measures.

(d)     In addition, there are questions of law and fact common to subclass IV, including the following:

(1)     Whether defendant Boeing failed to take reasonable and appropriate means to prevent exposure to family members of its employees and contract or outside workers who carried home respirable beryllium dust and particulate matter on their bodies, clothing, and other personal property; and,

(2)     Whether defendant Boeing failed to adequately warn and instruct its employees and contract or outside workers, and their family members, about the risks and hazards of exposure to respirable beryllium and the probability of exposure to family members.

(e)     The claims of the representative plaintiffs of each subclass are typical of the claims of the members of the subclass.

(f)     The representative plaintiffs of each subclass will fairly and adequately protect the interests of the subclass.

20.

This case is properly maintainable as a class action pursuant to Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, in that:

(a)     Pursuant to Rule 23(b)(1), adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or would substantially impair or impede

-11-

000011

their ability to protect their interests.

(b)     Pursuant to Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.  As medical monitoring is a preventive remedy, equitable and injunctive relief with respect to the class as a whole is appropriate.

(c)     Pursuant to Rule 23(b)(3), the questions of law and fact enumerated above which are common to all members of each subclass predominate over any questions of law and fact affecting only individual members of the subclass.

21.

A class action is superior to any other action for the fair and efficient adjudication of the controversy.

22.

The injunctive relief sought in this action will effectively provide relief to all members of the class.

23.

There are no unusual difficulties foreseen in the management of this class action.

24.

The class representatives are identified below.  Each representative plaintiff is a member of the proposed subclass that he or she seeks to represent.

-12-

000012

## SUBCLASS I REPRESENTATIVES

(1)   George Paz is an adult resident domiciliary of Slidell, Louisiana. He has been employed by the Defense Contract Management Agency to conduct quality assurance work at the Stennis Space Center from 1978 to the present, and he brings claims against Boeing, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(2)   Barbara Faciane is an adult resident domiciliary of Slidell, Louisiana. She has been employed by the Defense Contract Management Agency to conduct quality assurance work at the Stennis Space Center from 1998 to the present, and she brings claims against Boeing, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(3)   Joe Lewis is an adult resident domiciliary of Summit, Mississippi. He has been employed by the Defense Contract Management Agency to conduct quality assurance work at the Stennis Space Center from 1992 through the present, and he brings claims against Boeing, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

## SUBCLASS II REPRESENTATIVE

(1)   Donald Jones is an adult resident domiciliary of Slidell, Louisiana. He had been employed by the Defense Contract Management Agency to conduct quality assurance work at the Canoga Park Facility from 1977 to 1987, and he brings claims against Boeing, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

000013

## SUBCLASS III REPRESENTATIVES

(1)  Ernest E. Bryan is an adult resident domiciliary of Bay St. Louis, Mississippi.  He was  employed by Boeing at the Stennis Space Center as a quality control employee from 1977-1995, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(2)  Gregory Condiff is an adult resident domiciliary of Waveland, Mississippi.  He has been employed by Boeing at the Stennis Space Center as a quality configuration management employee from 18 May 1987 through the present, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(3)  Karla Condiff is an adult resident domiciliary of Waveland, Mississippi.  She has been employed by Boeing at the Stennis Space Center as a product assurance specialist from 2 November 1987 through the present, and she brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(4)  Odie Ladner is an adult resident domiciliary of Poplarville, Mississippi.  He has been employed by Boeing at the Stennis Space Center as an aerospace technician from 1983 through the present, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(5)  Henry Polk is an adult resident domiciliary of Long Beach, Mississippi.  He was

000014

employed by Boeing at the Stennis Space Center as an electrical technician and a quality assurance engineer employee from December 1965 to June 1994, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(6)     Roy Tootle is an adult resident domiciliary of Long Beach, Mississippi. He has been employed by Boeing at the Stennis Space Center as an associate technician employee from 14 September 1987 through the present, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

(7)     William H. Stewart, Jr. is an adult resident domiciliary of Gulfport, Mississippi. He has been employed by Boeing at the Stennis Space Center as an aerospace products technician from 7 December 1987 through the present, and he brings claims against defendants, Brush and Wess-Del, with respect to exposure to respirable beryllium at levels capable of causing disease.

### SUBCLASS IV REPRESENTATIVES

(1)     Margaret Ann Harris, is an adult resident domiciliary of Biloxi, Mississippi who was married to Joseph P. Harris at all material times. She was exposed to respirable beryllium at levels capable of causing disease, by contact with her husband, Joseph P. Harris, his clothes and other personal property, during the course of his employment with Boeing at the Stennis Space Center from 1979 to June 2002, and brings claims therefor against Boeing, Brush and Wess-Del.

(2)     Judith A. Lemon, is an adult resident domiciliary of Biloxi, Mississippi who was

-15-

married to Terry Lemon at all material times.  She was exposed to respirable beryllium at levels capable of causing disease, by contact with her husband, his clothes and other personal property, during the course of his employment with Boeing at the Stennis Space Center from 1975 to January 2002, and brings claims therefor against Boeing, Brush and Wess-Del.

(3)     Theresa Ladner is an adult resident domiciliary of Poplarville, Mississippi, who was married to Odie Ladner at all material times.  She has been exposed to respirable beryllium at levels capable of causing disease, by contact with her husband, his clothes and other personal property, during the course of his employment with Boeing at the Stennis Space Center from 1983 through the present, and brings claims therefor against Boeing, Brush and Wess-Del.

(4)     Yolanda Paz is an adult resident domiciliary of Slidell, Louisiana who was married to George Paz at all material times.  She has been exposed to respirable beryllium at levels capable of causing disease, by contact with her husband, his clothes and other personal  property, during the course of his employment with the Defense Contract Management Agency at the Stennis Space Center from 1987 through the present, and brings claims therefor against Boeing, Brush and Wess-Del.

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS AND PUTATIVE CLASS MEMBERS

25.

Plaintiffs are current and former employees of Boeing, and their family members, who

-16-

000016

have been exposed to the toxic substance beryllium from the use of beryllium-containing products at Stennis, and current and former employees of the Defense Contract Management Agency, and their family members, who have been exposed to the toxic substance beryllium from the use of beryllium-containing products while they were conducting quality assurance work at Stennis and/or at Canoga Park.

26.

At all times relevant hereto, Brush and Wess-Del manufactured, fabricated, processed, distributed, sold, supplied, and/or shipped beryllium-containing products to Boeing, which Boeing used at its Stennis and Canoga Park facilities.

27.

At all times relevant hereto, these products introduced respirable beryllium dust, fumes and particulate matter into the workplace environment at Stennis and Canoga Park due to the sandblasting, sanding, metalizing, welding, filing, grinding, machining and/or brazing of beryllium-containing components, to which processes Brush and Wess-Del knew the beryllium-containing products would be subjected.

28.

Harmful exposure to the hazardous substance beryllium causes various personal injuries from sub-clinical, cellular, and sub-cellular damage, to acute and chronic lung disease, dermatologic disease and cancer.

29.

Respiratory diseases are most commonly seen from exposure to beryllium and manifest themselves on a continuum from acute inhalational injury to acute pneumonitis to

000017

beryllium sensitization and the chronic indolent form of chronic beryllium disease ("CBD").

30.

CBD can develop many years after exposure has ceased, and typically has an indolent course and insidious onset of symptoms; on average CBD develops six to ten years after exposure has ceased, but has been reported to occur with a latency period greater than thirty years and as early as four months after initial exposure.

31.

CBD most commonly, though not exclusively, affects the lung and is characterized by one or more combination of symptoms including nonproductive cough, gradually progressive shortness of breath, chest pain, fatigue, anorexia, weight loss, fevers, night sweats and arthralgias; other organ involvement is known to occur including liver or myocardial involvement, hypercalcemia and/or nephrolithiasis.  CBD is a granulomatous disease of the lung causing characteristic scarring of the lung.

32.

Defendants knew or should have known that the sale to and use of beryllium-containing products for machining, processing, manufacturing and/or assembly at Stennis and Canoga Park would result in respirable beryllium dust, fumes and particulate matter into the workplace environment and that as a foreseeable result, plaintiffs and other employees of Boeing and the Defense Contract Management Agency who worked at Stennis and Canoga Park, would be exposed to harmful levels of the toxic substance beryllium.  Defendants knew or should have known that the introduction of respirable beryllium dust and particulate matter into the workplace at Stennis and Canoga Park also would result in family members of employees being exposed to

-18-

the toxic substance beryllium, because beryllium dust, fumes and particulate matter would be inadvertently carried home by employees on their bodies, clothing, and other personal property, resulting in harmful exposure to family members.

33.

Defendants knew or should have known that such harmful exposure to beryllium dust and particulate matter would result in personal injuries and put the plaintiffs and their families, as well as other Boeing and DCMA employees who work or have worked at Stennis and Canoga Park, and their families, at substantially increased risk of catastrophic, chronic diseases.

34.

Each of the plaintiffs and other Boeing and DCMA employees who work or have worked at Stennis and Canoga Park, and their families, have been exposed to harmful amounts of the hazardous substance beryllium as a foreseeable, direct and proximate result of the sale, distribution, use,  machining and processing of beryllium-containing products by the defendants.

35.

As a foreseeable, direct and proximate result of their exposure to the hazardous substance beryllium, plaintiffs and other Boeing and DCMA employees who work or have worked at Stennis and Canoga Park, and their families, already have suffered and will suffer in the future personal injuries in the form of sub-clinical, cellular, sub-cellular damage, and some will suffer from acute and chronic lung disease, dermatologic disease, and chronic beryllium disease.

36.

As a foreseeable, direct and proximate result of their harmful exposure, plaintiffs and other Boeing and DCMA employees who work or have worked at Stennis and Canoga Park, and

000019

their families, have been placed at substantially increased risk of catastrophic latent disease, such as chronic beryllium disease and cancer.

## V. CAUSES OF ACTION AS TO ALL SUBCLASSES

### FIRST CLAIM FOR RELIEF: MEDICAL MONITORING

### ALL PLAINTIFFS v. BRUSH ENGINEERED MATERIALS, INC., BRUSH WELLMAN, INC., AND WESS-DEL, INC.

37.

Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 36 as though fully set forth herein.

38.

Representative Plaintiffs, on behalf of themselves and their subclasses, assert a claim for medical monitoring. Plaintiffs contend that the Court has the inherent, equitable power to create a medical monitoring fund and to certify a class and subclasses for that purpose.

39.

Plaintiffs and members of the referenced subclasses have been exposed to harmful levels of the hazardous substance beryllium.

40.

Beryllium is a proven hazardous substance which can cause a variety of personal injuries.

41.

Plaintiffs' exposure to the proven hazardous substance beryllium was caused by defendants' wrongful conduct.

000020

42.

Monitoring procedures exist that make early detection of the diseases associated with beryllium exposure possible. The prescribed monitoring procedures are different from or in addition to those procedures normally recommended in absence of such exposure. The prescribed procedures are reasonably necessary according to contemporary scientific and medical principles for persons such as the representative plaintiffs and the class members who have been exposed to harmful levels of beryllium.

43.

Representative plaintiffs and members of the referenced subclasses will suffer irreparable harm if the requested medical monitoring program is not implemented. They are in danger of suffering catastrophic latent diseases from their beryllium exposure. Detection of these diseases and early treatment is medically reasonable and necessary to prevent the progression of further injury. It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to beryllium in order to effectively treat class members.

44.

Representative plaintiffs and members of the referenced subclasses have no adequate remedy at law because without the requested medical monitoring program they will be subjected to further injury and delayed treatment. Injunctive relief is also in the public interest.

45.

This Court has the inherent equitable power to enter a permanent injunction requiring the defendants to fund a court-supervised medical monitoring program. Plaintiffs hereby request that the Court enter a permanent injunction which requires defendants to fund a court-supervised medical

000021

monitoring program which provides for medical testing, surveillance, monitoring, and study of the representative plaintiffs and members of the subclasses for conditions caused by their exposure to beryllium, as well as the payment of their attorneys' fees and expenses.

46.

In the alternative, plaintiffs assert that they are entitled to an award of damages in an amount equal to the cost of the medical monitoring program, plus payment of attorneys' fees and expenses.

47.

By reason of the foregoing, the defendants are liable to plaintiffs for injunctive and equitable relief, including periodic medical monitoring and/or monetary damages for the cost of monitoring.

## SECOND CLAIM FOR RELIEF: PRODUCT LIABILITY

## ALL PLAINTIFFS v. BRUSH ENGINEERED MATERIALS, INC., BRUSH WELLMAN, INC., AND WESS-DEL, INC.

48.

Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 47 as though fully set forth herein.

49.

Representative Plaintiffs, on behalf of themselves and their subclasses, assert a claim for strict liability in tort and product liability, pursuant to the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63 (Rev. 2002), against defendants Brush and Wess-Del.

50.

The beryllium-containing products manufactured, fabricated, machined, processed, sold and/or distributed by Brush and Wess-Del and used at the Stennis and Canoga Park facilities

-22-

were unreasonably hazardous and dangerous and were "defective" within the meaning of the controlling Mississippi statutory authority. The products manufactured by defendants failed to contain appropriate warnings and/or instructions as required by law to ensure the safety of the persons, such as plaintiffs, who would ultimately encounter and use those products.

51.

As a foreseeable, direct and proximate result of the failure to warn by Brush and Wess-Del, plaintiffs have been injured.

52.

Brush and Wess-Del are liable to the plaintiffs pursuant to the Mississippi Products Liability Act for their failure to warn.

## THIRD CLAIM FOR RELIEF: NEGLIGENCE

## ALL PLAINTIFFS v. BRUSH ENGINEERED MATERIALS, INC., BRUSH WELLMAN, INC., AND WESS-DEL, INC.

53.

Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.

Representative plaintiffs, on behalf of themselves and their subclasses, assert a claim for negligence. Brush and Wess-Del, as manufacturers, fabricators, machiners, distributors, and sellers of beryllium-containing products, owed a duty to plaintiffs to use reasonable care in the placement and provision of warnings and/or instructions as required by law particularly because defendants knew or should have known that plaintiffs would be exposed to beryllium dust,

-23-

fumes, and particulate matter and, as a result of such exposure, would suffer injury.

55.

A duty of reasonable care owed by Brush and Wess-Del must be commensurate with the risk. Because beryllium is a highly toxic substance, Brush and Wess-Del owed a duty to plaintiffs to exercise extraordinary care as manufacturers, fabricators, machiners, distributors, and sellers of beryllium-containing products.

56.

In breach of its duty of care, Brush and Wess-Del were negligent by, among other things, to:

    (a)    Failing to warn and advise plaintiffs of the hazards and toxicity of their beryllium products of which they had knowledge;

    (b)    Failing to provide plaintiffs with instructions and information for the safe use of their beryllium products and sufficient safeguards to prevent them from suffering from beryllium exposure and developing chronic beryllium disease;

    (c)    Failing to package, label and contain their beryllium products in a manner so as to adequately warn users of the hazards attendant to their use and the necessary safeguards to take in using them;

    (d)    Failing to adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dusts, particles and fumes emitted by their beryllium products; and

    (e)    Failing to refuse to distribute and sell beryllium-containing products to Boeing's Stennis and Canoga Park facilities, as Brush and Wess-Del knew or should have

-24-

000024

known that there were inadequate engineering controls, warnings, and personal

protective equipment at these facilities so as to prevent or reduce plaintiffs'

exposure to beryllium.

57.

Brush and Wess-Del are liable to plaintiffs, pursuant to Mississippi negligence law, for

their failure to warn.

## FOURTH CLAIM FOR RELIEF: BREACH OF WARRANTY

## ALL PLAINTIFFS v. BRUSH ENGINEERED MATERIALS, INC., BRUSH WELLMAN, INC., AND WESS-DEL, INC.

58.

Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through

57 as though fully set forth herein.

59.

Representative plaintiffs, on behalf of themselves and their subclasses, assert a claim for

breach of warranty.

60.

By their conduct, as alleged, Brush and Wess-Del warranted to plaintiffs by their labeling,

or by the lack thereof, and by their conduct, that their beryllium-containing products were of

merchantable quality, and safe and effective for their intended use.

61.

Brush and Wess-Del breached said warranty in that their beryllium-containing products

were neither fit for their ordinary or reasonably foreseeable use nor of merchantable quality as

-25-

000025

they were inadequately labeled, in that they failed to warn of the nature and degree of risks related to lung cancer and chronic beryllium disease, and said condition existed at the time these beryllium-containing products left defendants' hands.

62.

The use of and contact with the beryllium products by plaintiffs was in a manner of and for the purposes for which the products were intended.

63.

Brush and Wess-Del had reason to know and did know that plaintiffs were relying on their warranty.

64.

As a direct and proximate result of the breach of said warranty, plaintiffs were injured, as alleged herein, and defendants are liable therefor.

**VI.  CAUSES OF ACTION AS TO SUBCLASSES I, II, AND IV**

**FIFTH CLAIM FOR RELIEF: NEGLIGENCE**

**PLAINTIFFS IN SUBCLASSES I, II, AND IV v. THE BOEING COMPANY**

65.

Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 64 as though fully set forth herein.

66.

Representative plaintiffs of subclasses I, II and IV, on behalf of themselves and all others similarly situated, assert a claim for negligence against Boeing.  Boeing had a duty to make its premises reasonably safe for all contract and outside workers and invitees, including plaintiffs.

-26-

000026

67.

At all material times, Boeing knew or should have known that its operations involved, among other things, the sanding, metalizing, welding, filing, grinding, machining and/or brazing of beryllium-containing products, which created respirable beryllium dust and particulate matter, and thus presented a serious risk of injury to persons on the premises of the plant, including the plaintiffs.

68.

At all material times, Boeing knew or should have known that its operations presented a serious risk of harm, injury and death to persons, including to DCMA quality assurance employees, who were working in its Stennis and Canoga Park plants, and thus the utilization and employment of proper analytical, monitoring, ventilatory, emission and/or process controls, equipment facilities and/or techniques was required.

69.

At all material times, Boeing actively concealed from its contract and outside workers and invitees, including plaintiffs, the hazards associated while working in close proximity to the grinding, machining, sanding, welding, metalizing, brazing, filing and sandblasting of beryllium-containing products.

70.

Notwithstanding that it knew, or in the exercise of reasonable care should have known, of the risks and hazards involved, entailed, inherent and/or presented in its operations, Boeing negligently and/or recklessly caused or allowed its contract and outside workers and invitees, including plaintiffs, to continue to be exposed to poisonous, toxic and hazardous levels of

-27-

beryllium inside its plants which were health-and-life threatening.  Therefore, Boeing was under a duty to warn its contract and outside workers and invitees, such as plaintiffs, of these health hazards and to use reasonable care in the machining and use of beryllium-containing products.

71.

In breach of its duty of care, Boeing was negligent, among other things, in:

(a) Failing to warn and advise plaintiffs of the hazard of working in a plant during operations involving the sanding, metalizing, welding, filing, grinding, sandblasting, machining and/or brazing of beryllium products, which operations introduced respirable beryllium into the workplace;

(b) Failing to provide plaintiffs with instructions and information regarding sufficient safeguards to prevent plaintiffs from suffering from beryllium exposure and developing chronic beryllium disease;

(c) Failing to adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dusts, particles and fumes emitted by the beryllium-containing parts;

(d) Failing to operate and/or perform its machining processes with proper and adequate ventilatory or emissions controls, devices or processes;

(e) Failing to use proper and safe industrial hygiene practices to limit the exposure to beryllium of its employees, contract and outside workers, and family members;

(f) Failing to adhere to applicable regulations and standards concerning indoor air pollution;

-28-

(g)    Failing to monitor and enforce compliance with applicable rules and regulations concerning the safe operation of its machining, sanding, sandblasting, brazing, welding, grinding, filing, and/or machining processes for its beryllium-containing products;

(h)    Failing to adopt and implement rules and regulations concerning the safe and proper operation of its machining processes;

(i)    Failing to cease operations when it appeared likely or certain that safe operations could not be reasonably achieved;

(j)    Failing to ascertain the actual levels of beryllium dust, fumes and particulate matter, which were being emitted, discharged and/or carried throughout the workplace, to assure that such levels did not pose a risk to contract and outside workers and invitees  in its plants;

(k)    Failing to provide adequate ventilation controls and contain and/or abate the respirable beryllium dust, fumes and particulate matter;

(l)    Failing to timely and/or properly notify appropriate government officials and agencies of the actual risk to its contract or outside workers, and invitees due to the use of beryllium-containing products;

(m)    Failing to diagnose and treat contract or outside workers, and family members of employees and contract workers, who were exposed to beryllium; and,

(n)    Failing to report to the Occupational Safety and Health Administration, the Atomic Energy Commission, the National Institute for Occupational Safety and Health, the Environmental Protection Agency, and all other appropriate

000029

government and industry bodies that employees, contract and outside workers, and invitees were not safe, and were suffering disease and injury, as a result of these actions of the defendants. This is required by law and such reporting would help prevent other workers, contract and outside workers, and invitees from suffering the same fate of these plaintiffs.

72.

In breach of its duty of care to the family members of its employees and contract or outside workers, defendant Boeing was negligent, among other things, in:

(a) Failing to take reasonable and appropriate means, including the use of engineering and/or ventilatory controls, industrial hygiene controls and personal protective equipment, to prevent and/or reduce exposure to its employees, and contract and outside workers, to respirable beryllium dust, fumes and particulate matter;

(b) Failing to take reasonable and appropriate means to prevent exposure to family members of its employees and contract or outside workers who carried home respirable beryllium dust and particulate matter on their bodies, clothing, and other personal property;

(c) Failing to adequately warn and instruct its employees and contract and outside workers, and their family members, about the risks and hazards of exposure to beryllium and the probability of exposure of family members; and,

(d) Failing to report to the Occupational Safety and Health Administration, the Atomic Energy Commission, the National Institute of Occupational Safety and Health, the Environmental Protection Agency, and all other appropriate

-30-

000030

government and industry bodies that employees, contract and outside workers, and invitees were not safe, and were suffering disease and injury, as a result of these actions of the defendants.  This is required by law and such reporting would help prevent other employees, contract and outside workers, and invitees from suffering the same fate of these plaintiffs.

73.

As the direct, proximate and foreseeable result of defendant's aforesaid negligent acts and omissions, plaintiffs require medical monitoring, for which Boeing is liable.

74.

The plaintiffs seek damages as follows:

    (a)    Establishment of a medical monitoring trust fund, or in the alternative, an award of damages in an amount equal to the cost of a medical monitoring program.

    (b)    Legal fees, litigation expenses and costs; and

    (c)    All general and equitable relief which this Court is empowered to provide.

75.

All plaintiffs seek trial by jury on all issues.

**WHEREFORE**, representative plaintiffs of all subclasses, on behalf of themselves and all others similarly situated, pray, that after due proceedings are had, that there be judgment rendered in their favor, and against defendants, Brush Engineered Materials, Inc., Brush Wellman, Inc., Wess Del, Inc., and the Boeing Company, for the establishment of a medical monitoring trust fund, and all other relief which is just and equitable in the premises.

-31-

Respectfully submitted, this ___29th___ day of June, 2004.

ROBERT LATHAM (#1076)
TRULY, SMITH & LATHAM, P.L.L.C
100 South Pearl Street
Natchez, Mississippi 39120
Telephone: (601) 442-6495
Facsimile:  (601) 442-8874

RANDALL A. SMITH (#2117)
STEPHEN M. WILES (#17865)
of
SMITH & FAWER, L.L.P.
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205


Please Serve:

Brush Wellman, Inc.,
c/o Registered Agent
Michael C. Hasychak
17876 St. Claire Avenue
Cleveland, Ohio  44110

Brush Engineered Materials, Inc.
c/o Registered Agent
Michael C. Hasychak
17876 St. Claire Avenue
Cleveland, Ohio  44110

Wess-Del, Inc.
c/o Registered Agent
David A. Kirst
1502 Arbuckle Court
Santa Clara, California  95054

000032

The Boeing Co.
c/o Registered Agent
Corporation Service Company
506 S. President Street
Jackson, Mississippi  39201

000033